FILED
IN CLERK'S OFFICE
U.S. DI------- E.D.N.Y.
★ APR 18 2005 ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
SIDNEY HAWKINS,

                Petitioner,

-against-

JOSEPH COSTELLO, Superintendent, Mid-State Correctional Facility,

                Respondent.
------------------------------------X

00 CV 1343 (SJ)

**MEMORANDUM AND ORDER**

APPEARANCES:

RICHARD ELLIOT KWASNIK
295 Madison Avenue, 21st Floor
New York, NY 10017
Attorney for Petitioner

DISTRICT ATTORNEY OF KINGS COUNTY
Renaissance Plaza at 350 Jay Street
Brooklyn, NY 11201
By:   Phillis Ruth Mintz
       Karen Marcus
Attorneys for Respondent

JOHNSON, Senior District Judge:

     Sidney Hawkins ("Petitioner" or "Mr. Hawkins") filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, seeking a reversal of his conviction for criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(4)) following a bench trial. Petitioner alleges improprieties during the grand jury proceedings against him, ineffective assistance of trial and appellate counsel, an unlawfully harsh and

1

P-049

excessive sentence, and denial of his right to a fair trial. Joseph Costello ("Respondent") opposed the motion. On June 24, 2002, this Court referred the matter to Magistrate Judge A. Simon Chrein for a Report and Recommendation ("Report") regarding Respondent's motion to dismiss the petition. Currently before this Court are the Report, Petitioner's objections to the Report, and Respondent's response to Petitioner's objections. For the reasons explained below, this Court ADOPTS the Report, in part, and Petitioner's § 2254 petition is GRANTED, in part.

## BACKGROUND[1]

On January 7, 2003, Magistrate Judge Chrein issued a Report recommending that all of Petitioner's claims be denied with the exception of Petitioner's claim that his Sixth Amendment right to compulsory process was denied when the trial court prohibited him from presenting potentially exculpatory evidence.[2] On that claim, the Magistrate ordered a hearing, at which Petitioner was appointed counsel to represent him, "to resolve the sole question of whether Eddie-Ed did in fact inform either Officer McCormack or Kullmier that he owned the gun of which petitioner was convicted of possessing." (Report at 31.)

---

[1] Familiarity with the facts and posture of the above-captioned matter is assumed, given that the information is summarized in the Report.

[2] Construing Petitioner's claims liberally to raise the strongest arguments that they suggest, see, e.g., Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983), the Magistrate restyled Petitioner's claim as asserting that "the trial court's denial of petitioner's attempt to introduce reliable exculpatory evidence denied him his due process rights guaranteed under the Federal and New York State Constitutions" because "[t]he issue here does not truly implicate the Confrontation Clause [since] petitioner was not prevented from confronting the witness against him." (Report at 23-24.)

On May 15, 2003, Magistrate Judge Chrein rescinded the order granting the hearing so that Petitioner could develop further evidence of the existence of Eddie-Ed's alleged statement to Officers McCormack or Kullmier. No such evidence was ever presented and, on January 12, 2004, the Magistrate – despite having found that "the trial court erred when it precluded petitioner from questioning Police Officer McCormick [sic] about whether petitioner's acquaintance, Eddie-Ed told Officer McCormack that he, and not petitioner owned the gun that petitioner was convicted of possessing" – recommended that Petitioner's § 2254 petition be denied.

## STANDARD OF REVIEW OF MAGISTRATE'S RECOMMENDATIONS

A district court judge may designate a Magistrate to hear and determine certain motions pending before the Court and to submit to the Court proposed findings of fact and a recommendation as to the disposition of the motion. See 28 U.S.C. § 636(b)(1). Within ten days of service of the recommendation, any party may file written objections to the Magistrate's report. See id. Upon *de novo* review of those portions of the record to which objections were made, the district court judge may affirm or reject the recommendations. See id. The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate judge as to those portions of the report and recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

In addition, failure to file timely objections may waive the right to appeal this Court's Order. See 28 U.S.C. § 636(b)(1); Small v. Sec't'y of Health and Human Servs.,

3

P-049

892 F.2d 15, 16 (2d Cir. 1989). Petitioner timely objected to the Magistrate's Report on the primary ground that "[t]he Magistrate Judge unconstitutionally placed the burden on petitioner to offer proof as to what the police officer would have testified had the [trial court allowed such testimony at Petitioner's bench trial nearly ten years ago]." (Pet'r Objection at 9.) Respondent, in response to Petitioner's objections, argues that the Petition fails to raise a federal question. (Resp't Resp. at 1-4.)

## DISCUSSION

### I. *Standard of Review of § 2254 Petition*

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires federal courts reviewing a habeas corpus petition to give a high degree of deference to a state court's adjudication. Hoi Man Yung v. Walker, 296 F.3d 129, 135 (2d Cir. 2002). However, "the federal habeas petitioner who claims he is detained pursuant to a final judgment of a state court in violation of the United States constitution is entitled to have the federal habeas court make its own independent determination of this claim without being bound by the determination on the merits of that claim reached in the state proceedings." Wainwright v. Skyes, 433 U.S. 72, 87 (1977). A federal court may overturn a contrary state court adjudication on the merits if it "result[s] [in a] decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 404 (2000).

A decision is contrary to clearly established federal law if it "contradicts the

4

P-049

governing law" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court. Id. at 405-06. The Supreme Court has defined an unreasonable application of law as the state court's "objectively unreasonable," application as opposed to an incorrect application. Id. at 409-10. The Second Circuit has defined "objectively unreasonable" to include an unreasonable refusal to extend a legal principle that is clearly established and defined by the Supreme Court to situations in which that principle should have governed. Hoi Man Yung, 296 F.3d at 135. While some "increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

## II. *Clearly Established Federal Law Regarding the Admissibility of Evidence Which Petitioner Sought to Elicit at His Bench Trial*

At his bench trial, Petitioner attempted to bring into evidence that Eddie-Ed admitted to owning and carrying the loaded automatic weapon that Petitioner was ultimately convicted of possessing. Defense counsel's opening statement explicitly alerted the trial judge that Mr. Hawkins' defense was temporary innocent possession. For example, counsel stated:

> It's the defendant's contention, Your Honor, and I think it will be proven not only by the defense's case, but through the People's case that this possession was fleeting possession. It was not knowing possession . . . . [T]he officers will be testifying to seeing

5

> the defendant in a dispute with another individual and taking the gun from this other individual – that's the fleeting possession – in defense of his own life; and the testimony will certainly bring out the fact that this weapon was not originally in the possession of Mr. Hawkins, and it was ultimately in his possession as self-defense .... (Trial Tr. at 6.)

Petitioner contends that the trial court improperly restricted his cross-examination of Officer McCormack by barring defense counsel from eliciting from the officer a statement, allegedly made by Eddie-Ed, in which Eddie-Ed admitted to owning the gun that Petitioner ultimately was convicted of possessing. According to Petitioner, Eddie-Ed, who was known in the community as a "bad guy," approached Petitioner outside a bodega and accused Petitioner of owing him money. (Trial Tr. at 66-67, 81-82, 84.) Petitioner denied owing any money and after words were exchanged, Eddie-Ed ran inside the bodega. (Id. at 67.)

Eddie-Ed, accompanied by another individual, then exited the bodega holding a brown paper bag. Both men approached Petitioner and as Eddie-Ed placed his hand inside the paper bag, the other man punched Petitioner on his head. (Id. at 67-68, 81-88, 92.) Petitioner testified that Eddie-Ed began to withdraw a gun from out of the paper bag; Petitioner grabbed the top of the gun with his right hand and held Eddie-Ed close to him in an attempt to disarm him. Meanwhile, the other individual continued to hit Petitioner. (Id. at 74-77.) Petitioner managed to strike Eddie-Ed in the neck with enough force to enable Petitioner to wrestle the gun out of Eddie-Ed's hand. Eddie-Ed

6

and his companion fled the scene and police arrived about thirty seconds later.[3] (Id. at 93-94.) Upon their arrival, Petitioner informed police that the gun belonged to Eddie-Ed and that Eddie-Ed and his companion had just attempted to rob him. (Id. at 77-79.) Several months after Petitioner's arrest, Officer McCormack encountered Eddie-Ed and asked him whether the gun in question belonged to him. (Id. at 26-28.)

Petitioner's trial counsel was precluded from pursuing this line of questioning during trial. Defense counsel was also barred from asking Officer McCormack whether Eddie-Ed had ever been arrested for weapon possession.[4] (Id. at 27-28.) The two evidentiary rulings which Petitioner now challenges are rulings made during the cross-examination of Officer McCormack, as follows:

| | |
|---|---|
| [Defense Counsel]: | And during this conversation, isn't it a fact that Eddie Ed had told you – |
| [Prosecutor]: | Objection. |
| [Defense Counsel]: | – that the weapon was his? |
| The Court: | Objection sustained |
| [Prosecutor]: | Move to strike |
| The Court: | Stricken |
| | *and* |
| [Defense Counsel]: | Do you know who the owner of that weapon is? |
| [Prosecutor]: | Objection |
| The Court: | Objection is sustained. "Owner" is a legal term. The trier of fact has to determine who the owner means [sic]. |

---

[3] The record indicates that Officers McCormack and Kullmier observed Eddie-Ed and his companion, both of whom were known to McCormack and other officers at the 75th Precinct, running down Belmont Avenue. (Trial Tr. at 9-10, 29, 38-39.)

[4] Officer McCormack denied knowing whether Eddie-Ed was arrested for weapon possession in connection with this case. (Trial Tr. at 28-31.)

7

(Trial Tr. at 27-28). Respondent claims, "[a]ssuming, *arguendo*, that Eddie-Ed ever made such a statement, that statement was inadmissible hearsay under New York law." (Resp't Resp. at 3.)

On the contrary, the alleged statement by Eddie-Ed should have been admitted as a declaration against penal interest, "[p]erhaps one of the most well recognized exception[s]" to the hearsay rule prohibiting the introduction into evidence of out-of-court statements asserted to prove the truth of the matter asserted. (Report at 25 (citing Chambers v. Mississippi, 410 U.S. 284, 299 (1973).) See also People v. Brensic, 70 N.Y.2d 9, 14 (N.Y. 1987) (holding that declarations against penal interest are recognized as an exception to the hearsay rule because the "self-inculpating nature of the declaration serves as an adequate substitute for the assurance of reliability usually derived from the administrative of an oath and the testing of the statements by cross-examination").

A party may attempt to introduce evidence under the declaration against penal interest exception to the hearsay rule in the following three situations: (1) voluntary admissions of the declarant; (2) *as exculpatory evidence offered by a defendant*; and (3) as evidence offered by the prosecution to establish guilt of an alleged accomplice of the declarant. See Lilly v. Virginia, 527 U.S. 116, 129-32 (elucidating Supreme Court's holding in Chambers, 410 U.S. at 300). The second scenario applies here. Where, as here, the declaration is offered by a criminal defendant because of its exculpatory nature, the question presented is whether the exclusion of the evidence denied the defendant the due process right to a fair trial. (Report at 26.) The Court finds that the trial court

8

unreasonably applied federal law when it prohibited Petitioner from eliciting Eddie-Ed's alleged declaration against penal interest as part of Petitioner's defense and that Petitioner's due process right to a fair trial was violated as a result of the erroneous restrictions.[5] Chambers, 410 U.S. at 302-03 (establishing that erroneous exclusion of evidence amounts to constitutional error if the exclusion deprived the defendant of a fundamentally fair trial).

### III. *Analysis of Magnitude of Trial Error*

Although the admissibility of evidence in state court as a matter of state law is generally unreviewable in federal habeas proceedings, see e.g., Mitchell v. Smith, 481 F.Supp. 22, 25 (E.D.N.Y. 1979), aff'd 633 F.2d 1009 (2d Cir. 1980), cert. denied, 449 U.S. 1088 (1981), where a federal court does entertain such a claim on collateral review, it will look to whether "the error had substantial and injurious effect or influence in determining the [fact-finder's] verdict." Brecht v. Abrahamson, 507 U.S. 619, 637

---

[5] Four prerequisites must be met before statements of a non-testifying third-party are admissible as declarations against penal interest: (1) the declarant must be unavailable to testify due to death, absence from the jurisdiction, or refusal to testify on constitutional grounds; (2) the declarant must be aware at the time of its making that the statement was contrary to his penal interest; (3) the declarant must have competent knowledge of the underlying facts; and (4) there must be sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability. People v. Thomas, 68 N.Y.2d 194, 197 (N.Y. 1986). First, although there is no evidence in the record that Eddie-Ed was unavailable to testify, the Court presumes that he was unavailable to testify given his constitutional right against self-incrimination. Second, Eddie-Ed was plainly aware that his alleged statement was against his penal interest at the time it was made, especially since he was never arrested or charged with a crime in relation to the gun in question. (See Trial Tr. at 30-31.) Third, it is obvious that Eddie-Ed had competent knowledge of his ownership of the gun and also, of the circumstances surrounding Petitioner's arrest based on his presence at the scene and his involvement in the altercation on which Petitioner's trial defense was based. Finally, the prosecution's absolute failure to present "even a scintilla of evidence to contradict or in any way offer a competing theory to challenge [P]etitioner's version of the events" suggests that there was sufficient competent evidence independent of the declaration. (Report at 28-29.)

(1993). Thus, the Court must now decide the magnitude of the constitutional error in this case. In other words, this Court must assess whether the deprivation of Petitioner's due process right to a fair trial is subject to harmless error analysis and, if so, whether the error was harmless beyond a reasonable doubt.

The Second Circuit has explained, "[h]armless-error analysis applies to errors which may 'be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.'" United States v. Smith, 987 F.2d 888, 892 (2d Cir. 1993) (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991). According to the Supreme Court, "[t]he harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence and promotes public respect for the criminal trial process by focusing on the underlying fairness of the trial rather than the virtually inevitable presence of immaterial error." Rose v. Clark, 478 U.S. 570, 577 (1986). An error such as the two at issue here is harmless unless "there is a reasonable probability that, had the evidence been [admitted into the record], the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667 (1985) (applying harmless error analysis to prosecution's failure to disclose exculpatory evidence to the defense).

The preclusion of Officer McKormack's testimony regarding Eddie-Ed's alleged admission of ownership of the gun deprived Petitioner of the opportunity to present evidence which might have shown (1) that Eddie-Ed did own, carry and brandish the

10

weapon on the day in question, (2) that Petitioner wrestled the gun away from Eddie-Ed in self-defense, and (3) that Petitioner's possession of the weapon was temporary and innocent. It is plainly obvious that the evidence which Petitioner was precluded from introducing formed the core of Petitioner's defense – that he lacked the requisite knowing and intentional *mens rea* and that his possession of the gun in question was temporary and innocent, based on his having wrestled the gun away from Eddie-Ed during a physical altercation. Thus, Petitioner was denied the opportunity to present potentially exculpatory evidence.

Because the trial court's rulings restricted the evidence available to Petitioner, the Court evaluates its magnitude in light of the other evidence at trial. See Smith, 987 F.2d at 892 (applying harmless-error analysis where petitioner denied a psychiatrist whose testimony may have been material to petitioner's duress defense); cf. Delaware v. Van Arsdall, 475 U.S. 673 (1986) (applying harmless error analysis to constitutionally improper denial of defendant's opportunity to impeach a witness for bias). But cf. Sullivan v. Louisiana, 508 U.S. 275, 283-84 (1993) (Rehnquist, C.J., concurring) (suggesting that harmless error analysis is not appropriate if an "error restricted the defendants' 'opportunity to put on evidence and make an argument to support [their] claim[s] of innocence' or prevented the [fact-finder] from considering certain evidence"). This Court finds that the fairness of Petitioner's trial was substantially undermined by the trial court's unreasonable evidentiary rulings such that the errors are not harmless beyond a reasonable doubt. Had Petitioner been able to elicit Eddie-Ed's

11

P-049

statement during his cross-examination of Officer McCormack, then the fact-finder, in this case the trial judge, almost certainly would have credited Petitioner's version of events and found that Petitioner's affirmative defense absolved him of the crime with which he was charged. This is especially so given the prosecution's complete failure to present "even a scintilla of evidence to contradict or in any way offer a competing theory to challenge [P]etitioner's version of the events." (Report at 28-29.)

Few rights are more fundamental than that of an accused to present evidence in his or her own defense. See Chambers, 410 U.S. at 302; see also Rock v. Arkansas, 483 U.S. 44, 51-53 (1987) ("The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Cause of the Fourteenth Amendment."). Consequently, this Court affirms the Magistrate's finding that "the trial judge's erroneous evidentiary ruling not only had a ['] substantial and injurious effect or influence in determining the [] verdict['] but also deprived the defendant of a fundamentally fair trial." (Id. at 30 (internal citations omitted).)

IV.  *Appropriate Habeas Relief*

Notwithstanding Magistrate Judge Chrein's finding that Petitioner was "deprived . . . of a fundamentally fair trial" (Report at 30), the Magistrate ultimately recommended that Petitioner be denied any relief, based on his failure to present evidence that Eddie-Ed did in fact admit to police officers his ownership of the gun which Petitioner was convicted of possessing. (Supp. Report.) Petitioner objects on the ground that, "The

12

passage of **nine** years, without delay by petitioner with the resulting dimming of memories, is now unfairly burdening this petitioner." (Pet'r Objection at 9.) This Court agrees.

Officer McCormack's sworn affidavit, dated April 29, 2003, states, in part. "I have read my testimony of March 8, 1995, wherein I stated that, after Mr. Hawkins' arrest but before my testimony at his trial, I encountered an individual known to me as Eddie Ed. I have no independent recollection of this encounter with Eddie Ed. Thus, *I have no recollection whatsoever of anything he said to me during this encounter.*" (Resp't Resp. at Ex. A at ¶¶ 2,3 (emphasis added); see id. at Ex. B ("This is the entire file . . . and none of these pages contain anything relating to the alleged interview of any officer or detective with Eddy Ed.")[6] Therefore, it is quite apparent that Petitioner's inability to present evidence of Eddie-Ed's statement is no fault of his own. Rather, the lack of such evidence is entirely attributable to the state. And the resultant, actual prejudice to Petitioner is this Court's inability to review the evidentiary issue based on the record, rather than on speculation.

Petitioner attempted to present evidence that Eddie-Ed made the alleged statements during the course of his bench trial; in fact, the trial judge's refusal to permit him to present this evidence is exactly the due process violation that Petitioner is

---

[6] While Respondent counsel has attempted to cast doubt on Petitioner's claim that there was an encounter between the officers and Eddie-Ed, it is clear from Officer McCormack's affidavit that such encounter did, in fact, occur. What remains unclear, however, is the substance of that encounter.

13

challenging. To deny Petitioner's claim on the basis of the fact that he has not presented such evidence when the trial court erroneously barred him from presenting exactly that evidence would be unreasonable and unjust. Under these circumstances, the Court finds that Petitioner is entitled to habeas relief. See Simmons v. Beyer, 44 F.3d 1160, 1168 (3d Cir. 1995) (granting habeas relief where petitioner "raised a colorable claim that the prosecution systematically excluded African Americans from the jury" which was unreviewable due to omissions in the record) ("The problem here is self-evident. No one recalls how many potential African American jurors were peremptorily challenged, and the assistant prosecutor does not remember and has no notes indicating why he struck individual venirepersons. Both parties agree that further reconstruction hearings would be fruitless. Simmons' Batson claim simply cannot be reviewed without a transcript of the voir dire to allow the reviewing court to examine whom the assistant prosecutor excluded and why. We do not and cannot know whether Simmons' jury selection process was infected by racial discrimination.")

This is a case in which Petitioner was deprived of a fundamentally fair trial, convicted, and sentenced to an indeterminate term of eight years to life imprisonment. As previously noted, the record before this Court is insufficient to reveal the facts necessary to a proper analysis of the trial judge's evidentiary rulings yet the record cannot be reconstructed due to the nine-year passage of time which has impaired Officer McCormack's memory and rendered it impossible for Petitioner's appointed habeas counsel to locate Eddie-Ed (who, according to Respondent counsel, was arrested in

14

1990). The most obvious harm in this case is Petitioner's loss of liberty resulting from a conviction obtained in violation of his due process right to a fundamentally fair trial. Accordingly, "the constitutional integrity of his current confinement is seriously in question," Simmons, 44 F.3d at 1171, and the Court orders Petitioner's immediate release, and retrial should the state elect to retry him.

## CONCLUSION

For the reasons set forth above, the Court finds that the trial judge's unreasonable preclusion of potentially exculpatory evidence at Petitioner's bench trial deprived Petitioner of his due process right to a fair trial and that the erroneous evidentiary rulings are not harmless beyond a reasonable doubt. Accordingly, Petitioner's conviction is reversed and he is to be released immediately.

SO ORDERED.
DATED: April 15, 2005
Brooklyn, NY

s/SJ

Senior U.S.D.J.